# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 18, 2012

## STATE OF TENNESSEE v. JOSEPH ANTHONY GONZALES

**Appeal from the Circuit Court for Montgomery County**
**No. 40900926      Michael R. Jones, Judge**

---

**No. M2011-02562-CCA-R3-CD - Filed December 11, 2012**

---

The Defendant, Joseph Anthony Gonzales,[1] appeals from the trial court's partial revocation of his probation and order that he serve one of his two eight-year sentences, imposed pursuant to his guilty pleas to dual counts of attempted voluntary manslaughter, in the Department of Correction (DOC).  He contends that the evidence relied upon by the trial court was insufficient to support the revocation and requests that this court reinstate his probation. Following our review, we affirm the judgment of the trial court.  The case is remanded to reflect the proper award of jail credits on the judgment form.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.
Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Reid Poland (at the revocation hearing) and Gregory D. Smith (on appeal), Clarksville, Tennessee, for the appellant, Joseph Anthony Gonzales.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; Steve Garrett and Robert Nash, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

---

[1] The Defendant is referred to as  Joseph Gonzales, Joseph A. Gonzales, Joseph Anthony Gonzales, Joseph Anthony Gonzalex, and Joseph Anthony Gonzalez throughout the record.  We will refer to the Defendant by the name listed in the original judgment.

The record reflects that the Defendant pled guilty as a Range II, multiple offender to two counts of attempted voluntary manslaughter, Counts 1 and 4, both Class D felonies, on November 10, 2009. The remaining counts were dismissed. The trial court sentenced the Defendant to eight years on each count, to be served consecutively, for a total effective sentence of sixteen years. The Defendant was given jail credit for 143 days, credited to Count 1, and ordered to serve the remainder of the sentence on probation. The trial court also ordered the Defendant to pay court costs in the amount of fifty dollars per month and obtain employment and informed the Defendant that restitution would be determined by supplemental order or hearing.

On March 19, 2010, the Defendant's first violation of probation (VOP) was filed, and a warrant was issued for his arrest. The Defendant's failure to abide by probation rules one, two, eight, and nine were cited as the bases for the violation warrant. Regarding rule one, the Defendant violated the law when he was arrested for driving on a revoked license; driving under the influence of an intoxicant (DUI); violation of implied consent; and resisting arrest. Regarding rule two, the Defendant failed to report the above-listed charges to his probation officer. Regarding rule eight, the Defendant failed to refrain from using intoxicants to excess as the new offenses involved the use of an intoxicant. Regarding rule nine, the Defendant failed to pay the required supervision fees and was $180 in arrears. On October 6, 2010, the Defendant admitted the violations and waived a hearing on the VOP. As a result, the trial court revoked his probation but reinstated him to probation and ordered that he complete a twenty-eight-day in-patient program.

On March 24, 2011, the Defendant's second VOP was filed, and again, a warrant was issued for his arrest. The Defendant's failure to abide by probation rules one, four, and nine were cited as the bases for this violation warrant. Regarding rule one, the Defendant violated the law when he was charged with two counts of domestic assault on March 15, 2011. Regarding rule four, the Defendant failed to provide proof of employment or of seeking employment. Regarding rule nine, the Defendant failed to pay the required fees: the Defendant owed a total of $13,248 in past probation fees and restitution. The trial court appointed counsel to represent the Defendant, and a hearing was held on September 29, 2011.

On July 21, 2011, the Defendant's new probation officer, Barbara Strausser, filed an amended violation warrant. In addition to the allegations above, she also cited the following bases in support of the warrant. Regarding rule one, the Defendant violated his probation when he was charged with public intoxication on May 10, 2011; resisting arrest and contempt for violating the conditions of his release on May 28, 2011; and contempt for violating the conditions of his release on July 16, 2011.

Ms. Strausser and both victims of the Defendant's domestic assault charges, Amanda Freeman and Brittnee McClain, testified at the revocation hearing. Ms. McClain testified that she was the Defendant's ex-girlfriend and that the March 15, 2011 altercation began after the Defendant came to her apartment around 4:00 a.m. after leaving a bar. She explained that after the Defendant noticed that she had been text messaging an ex-boyfriend on her roommate's phone, he threw the phone against a wall, breaking it, and then "smacked" her. Ms. McClain testified that she told the Defendant not to "put [his] hands on [her any]more." The Defendant smacked her again, and she went into the hallway because the Defendant's child was lying in the bed where the altercation began. Ms. McClain stated that the Defendant threw a beer down the hall near her roommate's bedroom, breaking a picture, and then the Defendant began choking her in the hallway. She explained that as they were "tussling," her "roommate, came down the hallway and jumped on [the Defendant.]" According to Ms. McClain, her roommate, Amanda Freeman, hit the Defendant first and "kind of got him off" her.

Ms. McClain testified that she saw the Defendant strike Ms. Freeman with his fists, but she could not recall how many times because "[t]here was a lot going on." Ms. McClain further testified that it was the Defendant who called the police after the altercation. She explained that when the police arrived, all three of them were arrested and taken to jail. Ms. McClain testified that her charges were eventually dropped after she agreed to provide her statement explaining what happened during the altercation on March 15, 2011. She explained that she had initially refused to give a statement because she "did not want the police there[.]"[2] Ms. McClain stated that she did not sustain any injuries from the altercation. She acknowledged that, after the altercation, the court ordered her and the Defendant "not to have any contact" and that she currently had charges pending in general sessions court for violating that order by sending text messages to the Defendant.

On cross-examination, Ms. McClain testified that both she and the Defendant were violating the court's "no contact" order because they were still in a relationship, had remained "in contact[,]" and saw each other "every day[.]" She alleged that the Defendant only showed the police the text messages that she sent him after the Defendant asked to come get a couch that he had brought to her apartment, and she refused. Ms. McClain stated that she was truthful in her testimony.

Ms. Freeman testified that she did not see how the altercation between Ms. McClain

---

[2] Despite the State's introduction of the judgment form dismissing Ms. McClain's assault charges, which noted that the dismissal of her charges was with prejudice and conditioned upon her agreement to testify against the Defendant at trial, Ms. McClain maintained that she was unaware that her charges were dismissed because she agreed to testify against the Defendant and that she had not seen the judgment form.

and the Defendant began, but she came out of her room when she heard a picture shatter. Ms. Freeman explained that she saw the Defendant holding Ms. McClain "by the throat, up against the wall and [she] just reacted; [she] went after him." Ms. Freeman testified that when she hit the Defendant, he "turned around" and "started coming at [her]" and that was when Ms. McClain "started defending [her]"; then, "all three [of them] got into an altercation." Ms. Freeman testified that the Defendant hit her multiple times and that charges initially brought against her were dropped.

On cross-examination, Ms. Freeman testified that she was aware that Ms. McClain was still "around and being with [the Defendant]" and that was why Ms. McClain no longer lived with her. She also testified that the Defendant called the police after the incident because Ms. McClain was throwing his belongings outside.

Ms. Strausser testified that she was currently the Defendant's probation officer but that the Defendant's previous probation officer, Joe Oliver, filed the original violation warrant. Ms. Strausser explained that she filed an amended warrant after "inheriting" the Defendant's supervision from Mr. Oliver. According to Ms. Strausser, Mr. Oliver's warrant just indicated that the Defendant had been charged with the two domestic assaults on March 15, 2011. Ms. Strausser testified that her amended warrant included mainly technical violations: the Defendant failed to provide proof of securing employment[3]; the Defendant made no payments on his probation fees or court costs, owing $720 in probation costs,[4] $248 in court costs, and was approximately $13,000 in arrears, including restitution; and the Defendant failed to complete the twenty-eight-day alcohol and drug program as instructed in October 2010. However, her amended warrant also cited that the Defendant acquired the additional charges of public intoxication, resisting arrest, and contempt of court. Ms. Strausser explained that the Defendant was prohibited from going to any establishments whose primary purpose was to sell alcohol and that he was also prohibited from "being intoxicated." She also explained that she had only met with the Defendant once since she inherited the case in July because he was arrested on the violation warrant shortly thereafter, and she did not meet with the Defendant while he was incarcerated.

The trial court granted a recess to allow the Defendant to present the testimony of his former probation officer. On October 28, 2011, Mr. Oliver, testified that he was the Defendant's probation officer for approximately one year and that the Defendant reported to him as directed during that time. He also testified that the Defendant followed his

---

[3] Ms. Strausser did note that the Defendant had brought in a letter, dated June 16, 2011, stating that he had been at the Career Center seeking employment.

[4] She did note, however, that someone dropped off a $200 money order after the warrant had been filed.

instructions, other than acquiring the new offenses and being unable to gain employment. Regarding the treatment facility that the Defendant was supposed to attend, Mr. Oliver testified that the Defendant was having "some issues with his children and had to make arrangements for that[,] and then before he could get in there, he got back in trouble." Mr. Oliver also testified that he had spoken with the forensic social worker who was facilitating the Defendant's treatment, and she said that, if the Defendant was reinstated to probation, she was willing to do another assessment on him to determine if he was qualified for treatment and determine placement. Mr. Oliver testified that he believed that most of the Defendant's trouble stemmed from alcohol abuse. Mr. Oliver also testified that, in light of the Defendant's new charges, he believed that the following classes would be "very useful" and that these classes would be available to the Defendant if he was reinstated to probation: anger management class; relapse prevention class; and the "Thinking for a Change" class.

After the hearing, the trial court issued the following findings:

> . . . Mr. Gonzales was very violent in choking this victim and also assaulting a roommate who is trying to help the lady, or she might well be dead.

> Mr. Gonzales was convicted pursuant to pleas of attempted voluntary manslaughter by having shot into a crowd of people. I really don't see any way that I can trust Mr. Gonzales on probation to do what he is supposed to do? If you commit crimes on probation, you have to suffer the consequences of what you do.

The trial court ordered the Defendant to serve the remainder of Count 1 and granted him credit for the time he served prior to the plea, 141 days, as reflected on the judgment. Regarding the post-violation warrant jail credit, the trial court noted,

> . . . . He has -- since '09, been [in jail] -- 3-17-10 [credit] of one day[;] . . . 4-11-10, eight hours; 6-12-10, three hours; 3-28-11, one hour; and then July 21st until today of one hundred days. So he will have those days as credit on that eight year sentence. After he has served that, then the second eight year sentence will start on probation.[5]

As a final matter, the trial court noted, "I am not going to do anything with the DUI, I am just going to return him to probation and allow it to expire whenever it is supposed to."

_____

[5] By our calculations, this computes to an additional credit of 101 days and 12 hours to the Defendant's 8-year sentence. However, only 100 days of this credit is reflected on the judgment.

ANALYSIS

The Defendant contends that the trial court erred in revoking his probation based solely upon "the assaults related to an incident from March 15, 2011." The Defendant explains, "[t]he issue here is that [he] call[ed] the police regarding the March 15, 2011 domestic altercation[, and a]fter calling the police, [he] quietly sat on a couch and waited for the police to arrive."[6] The State responds that the Defendant's act of calling the police after the altercation does not negate his culpability for the preceding assaults. The State further responds that there was ample evidence presented to the trial court to support its revocation of the Defendant's probation: the acquisition of new charges, the technical violations, and this being the Defendant's second revocation.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). Upon finding by a preponderance of the evidence that a defendant has violated the conditions of his release, the trial court "shall have the right ... to revoke the probation and suspension of sentence" and either "commence the execution of the judgment as originally entered" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. § 40-35-311(e).

In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). In reviewing the trial court's finding, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious, rather than an arbitrary, judgment. Id. An arbitrary judgment "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn.1999)).

Criminal conduct that is the basis of pending charges may serve as the basis for a revocation of probation. State v. Andrew B. Edwards, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App. May 26, 2000), perm. app. denied, (Tenn. Sept. 11, 2000). However, the trial court cannot rely solely on the mere fact of an arrest or an indictment. Id. (citing State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991)). Instead, the State must provide evidence "in order to establish the ... commission of another offense." Id. Put another way, the State must produce evidence "to establish that the defendant committed the

---

[6] The Defendant is essentially challenging the sufficiency of the evidence that the trial court relied upon in revoking his probation.

offense with which he has been charged." State v. Lontrell Williams, No. W2009-00275-CCA-R3-CD, 2009 WL 3518171, at *3 (Tenn. Crim. App. Oct. 30, 2009).

In the instant case, we conclude that the evidence from the revocation hearing established by a preponderance of the evidence that the Defendant violated the terms of his probation. The State presented the testimony of the two domestic assault victims, establishing that the Defendant was physically violent towards the two women: he choked one victim until her roommate came to assist, at which time the Defendant proceeded to hit the roommate multiple times with his fists. The State also presented the testimony of the Defendant's then-current probation officer who testified that the Defendant had several technical violations: he was $13,000 behind on his fees; he had not attended a required alcohol and drug class ordered after his previous violation of probation for DUI; and he had not provided proof of employment. Despite the trial court's limited findings, there was a wealth of evidence that the Defendant had violated the conditions of his release.

On June 7, 2012, this court permitted the Defendant to supplement the record with documentation that the underlying charges which served as a basis for the decision to revoke had been dismissed. Regardless of the dismissal of these charges, this court has previously held that a trial court may premise a revocation upon proven allegations of a violation warrant, even if the charges have been dismissed. State v. Agee Gabriel, No. M2002-01605-CCA-R3-CD, 2004 WL 1562551, at *3 (Tenn. Crim. App. July 12, 2004) (holding that "validity of the original warrant was not affected by the dismissal of the criminal charges arising from the acts alleged in the warrant"); State v. Larry D. Turnley, No. 01C01-9403-CR-00094, 1994 WL 714227, at *3 (Tenn. Crim. App. Dec. 22, 1994) ("The fact that the Defendant was not convicted of any of the offenses with which he was charged does not mandate dismissal of the probation violation warrant."); State v. Delp, 614 S.W.2d 395, 396-97 (Tenn. Crim. App. 1980) (revocation may be based upon criminal acts alleged in violation warrant even though defendant was acquitted of charges for underlying acts). Therefore, we conclude that the trial court exercised a conscientious judgment and did not act arbitrarily in revoking the Defendant's probation.

Additionally, we note that one day and twelve hours of the post-violation jail credit that the trial court granted the Defendant at sentencing is not reflected on the judgment form. Therefore, we remand this case to the trial court for correction of the judgment to reflect that the Defendant will receive 101 days and 12 hours of post-violation jail credit in addition to the 141 days of jail credit, as noted on the original judgment form, for a total of 242 days and 12 hours of jail credit.

## CONCLUSION

Accordingly, the judgment of the trial court is affirmed, and the case is remanded for correction of the judgment form.

_____
D. KELLY THOMAS, JR., JUDGE